## JOHN ROGERS v. A. J. CLEMMANS, *et al.*

1. PRE-EMPTION, *Consummated after Death of Preëmptor.* Where a person, entitled to claim the benefits of the preëmption laws of the United States, dies before consummating his claim, and the administrator of the estate files the necessary papers to complete the preëmption in favor of the heirs of the deceased preëmptor, and makes payment to the United States therefor, from moneys belonging to the estate, the patent causes the title to inure to such heirs, as if their names had been spe-cially mentioned, and the land thus preëmpted is not liable for the debts of the deceased, or the charges of administration; nor has the probate court the authority to sell or dispose of the land so patented to the heirs of the deceased preëmptor, to reimburse the estate for any moneys used by the administrator to consummate the preëmption.

2. PROBATE COURT — *No Jurisdiction.* Where the proceedings relating to the sale and conveyance of real estate by an administrator disclose that the probate court had no jurisdiction, ch. 127, Laws of 1872, does not render the sale valid, nor confer any title or interest in the premises upon the purchaser.

3. SECOND TRIAL; *Practice.* Where a petition is filed for the correction of a deed executed by the administrator of the estate of an intestate, and such petition also contains averments in the nature of an action of ejectment and a recovery for mense profits, the plaintiff, as a matter of right, cannot demand a second or another trial. (*Keith v. Keith,* ante, p. 26.)

### *Error from Johnson District Court.*

ACTION brought by *Emma J. Rodgers* against *Clemmans* and others, to reform an administrator's deed to certain land in Johnson county, and to eject defendants therefrom. Trial at the March Term, 1880, of the district court, and judgment for defendants. The plaintiff brings the case here. The facts are stated in the opinion.

*A. B. Jetmore,* and *C. A. Sperry,* for plaintiff in error.

*A. Smith Devenney,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: In the year 1858 Charles Mayo died, intestate, at Olathe, Johnson county. He left a widow and two children, who resided in Boston, Massachusetts. At the time of his death, he had filed on the southeast quarter of section 35, township 13, range 23, in Johnson county, then territory of Kansas. On January 3, 1859, J. E. Hayes, at the solicitation of creditors, was appointed administrator of the estate, qualified, and entered upon the duties thereof. In 1859, the administrator, after disposing of the personalty, obtained an order to sell a dwelling house and certain lots in the town of Olathe, for the payment of debts of the intestate, and afterward sold the same. In 1859, the administrator also obtained an order from the probate court to appropriate sufficient of the assets of the estate to preëmpt the said 160 acres of land upon which Mayo had settled, filed, and improved. On March 15, 1859, the administrator went to the United

States land office at Lecompton, and preëmpted the land for the benefit of the heirs of Charles Mayo, deceased. The land was subsequently patented under such entry by the general government "to the heirs of Charles Mayo, deceased," not naming them specifically. Hayes claimed that he used his private funds to pay for the land, and that he afterward reimbursed himself out of the estate. On January 7, 1863, he applied to the probate court for an order to sell the land for the payment of the debts of the intestate, and costs of administration. On the same day, the court made the order for sale, and on the 29th of the same month the land was sold, in forty-acre tracts. Afterward, on February 2, 1863, the sale was approved and confirmed. A. J. Hill, the father of Emma Jane Rogers, *nee* Hill, became the purchaser of a portion of the land at the administrator's sale of January 29th, and obtained a deed of the administrator for eighty acres, dated February 2, 1863. On November 30, 1864, Hill died, leaving his wife Susannah and two minor children surviving him. On October 7, 1868, A. S. Devenney purchased the land of the heirs of Charles Mayo, deceased, and received a deed therefor and took immediate possession thereof. On October 27, 1868, Devenney conveyed a half-interest (undivided) in the land, to one McBride. On the 29th of October, 1868, Devenney and McBride brought their action in the district court of Johnson county against Susannah Smith, the former wife of A. J. Hill, and the two children, to quiet the title to the land, and judgment was obtained by them in the action. Since then, the late wife of A. J. Hill and her son Rezin Hill have died. Emma Jane Hill married Rogers, and on February 21, 1878, she filed her petition in the district court of Johnson county, praying for a correction of the deed executed by J. E. Hayes, administrator of the estate of Charles Mayo, deceased, of the date of February 2, 1863, for the eighty acres of land bought by her father, A. J. Hill, at the administrator's sale of January 29, 1863. The petition also contained allegations that the defendants A. J. Clemmans and Frederick Gilbert, who claim title under Devenney

and McBride, were in possession of a part of the premises, and unlawfully kept the plaintiff out of the possession thereof, and asked for a recovery of the possession and damages for unlawfully withholding of the same. Pending the action, Emma Jane died, leaving her husband, John Rogers, her only heir. He was substituted as plaintiff in this action. The case was tried to the court below without the intervention of a jury, and a general finding rendered in favor of defendants. The plaintiff brings the case here.

Various questions are presented in the briefs of counsel for our determination. We need not notice all of them, because underlying these questions is the paramount one, whether the land in controversy, after the death of Charles Mayo, was liable for his debts. Sec. 2269 of the Revised Statutes of the U. S. 1873-4, reads:

"Where a party entitled to claim the benefits of the preemption laws dies before consummating his claim by filing in due time all the papers essential to the establishment of the same, it shall be competent for the executor or administrator of the estate of such party, or one of the heirs, to file the necessary papers to complete the same, but the entry in such cases shall be made in favor of the heirs of the deceased preëmptor, and patent thereon shall cause the title to inure to such heirs as if their names had been specially mentioned."

Section 2263, of the same statutes, reads:

"Prior to any entries being made under and by virtue of the provisions of sec. 2259, proof of settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie, agreeably to such rules as may be prescribed by the secretary of the interior, and all assignments and transfers of the right thereby secured prior to the issuing of the patent shall be null and void."

Under these provisions, the action of the administrator in filing the necessary papers and making payment to complete the preëmption, enabled the heirs to obtain a patent to the land, and thereon the title to the land inured to the heirs as if their names had been specially mentioned therein. Therefore the title to the

1. Pre-emption consummated after death of pre-emptor.

land was derived by the heirs-at-law under the act of congress directly from the United States. They did not take it from the decedent, subject to the debts and costs of administration. They had the right to convey and give possession as grantees of the United States, and any attempted sale made by the administrator of the estate of Charles Mayo, deceased, was an absolute nullity, and no title was communicated thereby to any purchaser. As the land was no part of the estate of the decedent, the probate court had no power to make any order to sell the same for the debts of the estate, or for the costs of administration. The proceedings to subject this land so patented by the United States to the heirs of Charles Mayo, deceased, to pay the debts of such deceased, were not only without authority of law, but absolutely null and void, **2. Probate court— no jurisdiction.** as the probate court had no jurisdiction over the land and property so patented to the minors. While the probate court has, by the constitution and statutes, jurisdiction over the settlement of the estates of deceased persons, and upon due proceedings may subject the personal and real property thereof to the payment of debts of the decedent, and also the costs of administration, it has no authority to reach out and dispose of property belonging to the heirs of a decedent which is in no respect subject to the debts or the liabilities of such decedent. While the probate court has jurisdiction to hear and determine all applications made by administrators to sell the real estate of their decedents which is liable to sale, and while this necessarily involves the power of determining whether in any particular case the real estate sought to be sold is so liable or not, yet where it appears from all the proceedings that the land is no part of the estate, and no way subject to the debts of the decedent, jurisdiction is not obtained. In this case, the proceedings had before the probate court on January 7, 1863, granting the sale of the lands, show upon their face that the lands were preëmpted after the death of the intestate; therefore the probate court had no authority to treat them as a part of the estate, or to sell or otherwise dispose of them. Even if it be asserted that a decision of the

probate court subjecting the lands to sale for the debts of the decedent, or to satisfy moneys advanced by an administrator to complete a preëmption, cannot be questioned by the heirs-at-law in a different proceeding, this principle has no application here, as the heirs made no appearance in the probate court, and were never notified of the petition to sell the lands in controversy. The record affirmatively shows the order of sale was granted January 7, 1863, the same day the administrator applied for the order. No notice to the persons interested in the estate was given or published, and as notice, so far as the heirs are concerned, is jurisdictional, the order of sale and the proceedings based thereon, being without notice, are void. (*Mickel v. Hicks*, 19 Kas. 578.)

Counsel for plaintiff contend that as a petition for the sale of certain lots was filed May 10, 1859, the probate court had the right on January 7, 1863, to make an order for the sale of these lands. An examination of the record shows that the petitions of May 10, 1859, and January 7, 1863, are separate and independent applications. The proceedings under the petition of May 10, 1859, do not aid the orders obtained upon the petition of January 7, 1863. The application to sell the land described in the petition of May, 1859, had no reference to the lands claimed by plaintiff, and the order of January 7, 1863, is not based upon that petition. The mere benefit received by the heirs from the action of the administrator in consummating the preëmption does not estop them from contesting the proceedings in the probate court. (*Black v. Dressell's Heirs*, 20 Kas. 153.) If the estate of Charles Mayo, deceased, or the creditors of the estate, had any valid claim for the moneys advanced to complete the preëmption, such claim ought to have been enforced, if capable of enforcement, by proceedings entirely different from those attempted under the order of January 7, 1863. Counsel for plaintiff invoke to their aid ch. 127, p. 272, Laws of 1872. The record overturns the deed, and discloses that the court below had no jurisdiction in the premises; therefore, the statute of 1872 does not avail.

One other matter only need be mentioned. The court re-

fused a second or another trial. In this we think there was no error. The plaintiff did not bring merely an action for the recovery of real property with the addition of a claim for mesne profits, but in an action begun for the correction of a deed executed by the administrator of the estate of Charles Mayo, deceased, a declaration in the nature of ejectment and a recovery for mesne profits was added. Where a plaintiff thus joins an action in the nature of ejectment to his equitable action to correct a deed, we do not think, as a matter of right, he comes within the provisions of § 599 of the code. He therefore cannot demand, as a matter of right, another trial. (*Keith v. Keith,* ante, p. 26.)

*3. Second trial; practice.*

The other matters submitted need not be considered.

The judgment of the district court will be affirmed.

VALENTINE, J., concurring.

BREWER, J.: I concur in the judgment, but not on the ground stated in the opinion of the court.