IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 19, 2010 Session

IN RE ESTATE OF BILLY JOE STRICKLAN

Appeal from the Probate Court for Monroe County
No. 2007-062      J. Reed Dixon, Judge

No. E2009-01086-COA-R3-CV - FILED JUNE 28, 2010

This appeal involves contested wills and a settlement agreement involving minors. After the death of Billy Joe Stricklan ("Decedent"), his daughter, Teresa Diane Stricklan Coleman[1] ("Daughter"), filed two wills for Probate. Finding the first will valid would result in the entirety of Decedent's estate being awarded to Daughter, while finding the second will valid would result in the estate, minus $100 to Daughter, being divided among Decedent's great-grandchildren. After the Probate Court certified the case to Circuit Court for a will contest, Daughter and the guardian ad litem for the great-grandchildren negotiated a settlement. These parties obtained the Probate Court's approval of the settlement over the objection of the proponent of second will, Decedent's brother, Reed Stricklan ("Brother"). The Probate Court also ordered a partial distribution of the cash assets now held in the estate to Daughter. Brother appeals. We vacate the settlement order.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Vacated; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

Barry K. Maxwell and W. Holt Smith, Madisonville, Tennessee, for the appellant, Reed Stricklan.

J. Lewis Kinnard, Madisonville, Tennessee, for the appellee, Teresa Diane Stricklan Coleman.

_____

[1]Ms. Coleman's name also appears in the record as "Terresa Diana."

Doris Matthews, Madisonville, Tennessee, Guardian Ad Litem for Adrianne Nichols, Alesha Nichols, and Abby Nichols.

## OPINION

## I. BACKGROUND

Decedent died on May 21, 2007. Two wills have been presented for probate. In the first, prepared January 22, 1982 ("1982 Will"), Decedent devised all of his property to his wife, Zelma Lee Stricklan. In the event that Decedent's wife predeceased him, all of the property was to pass to Daughter. Decedent's wife died on November 10, 2002, thus Daughter is the sole beneficiary under the 1982 Will.

In the second will, prepared October 25, 2004 ("2004 Will"), Decedent devised all of his property, less $100 to Daughter, to his three minor great-granddaughters – Abby Nicholson, Alesha Nicholson, and Adriane Nicholson ("Great-Granddaughters") – to be held in trust until they turn twenty.[2] Regarding Daughter, the maternal grandmother of the three named minor beneficiaries, the 2004 Will specifically stated the following:

> To my daughter, Teresa Diane Coleman, I leave the sum of One Hundred ($100) Dollars. My daughter has previously received the bulk of her inheritance and is to receive none of the monies set out hereinabove for my great-grandchildren.

This provision would seem to refer to the fact that Decedent sold his primary business, Stricklan Tree Service, Inc., to Daughter and her husband, Joe Coleman, immediately prior to the execution of the 2004 Will. Attorney W. Holt Smith and Rachel Denise Brown witnessed the 2004 Will. Both swore at that time that "Billy Joe Stricklan was, in my opinion, of sound mind."

On June 22, 2007, Daughter filed a Petition for Probate of the 1982 Will. With this petition, Daughter also attached a copy of the 2004 Will, which she claimed was invalid. In the petition, Daughter alleged, inter alia, as follows:

> 2. After her mother's death, her father became despondent and began to make irrational decisions in his business of Stricklan Tree Service, Inc., where the Petitioner and her husband were

---

[2]The last name of the Great-Granddaughters is actually Nichols.

employed. Within a short time, he fire[d] both Petitioner and her husband, who was the field supervisor, his granddaughter, Amanda Coleman Nichols, and his grandson, Billy Coleman, after making unfounded charges against them.

3. That the primary business of Stricklan Tree Service, Inc. was doing power line maintenance for Fort Loudoun Electric Cooperative and shortly after the firing[, h]e terminated his contract with Fort Loudoun. General Manager for Fort Loudoun[,] Bob Long, came to Petitioner's husband, Joe Coleman[,] and asked [him] to take over the contract. Upon discussing the situation . . . , Petitioner and her husband agreed to purchase the business according to [her father's] terms, for the sum of $240,000.00, payable to him at the rate of $4,000.00 per month.

. . . The parties had the necessary legal documents prepared . . . at the office of her father's attorney, J. Lewis Kinnard.

4. That immediately after the execution of the agreement, her father appeared to have suffered a mental breakdown and went on a rampage, claiming that Petitioner and her husband had stolen his business and [he] threatened to kill his grandson, Billy Coleman. Further that he went to most of his friends and acquaintances and repeated these claims and while in such a state, went to legal counsel, [who] had previously opposed him in litigation and against whom he had loudly complained, and had a new will prepared . . . .

5. Petitioner believes that her father suffered a mental breakdown so that he was incompetent to make a will, and that [the 1982 Will] should be determined to be his Last Will and Testament.

Daughter requested in the petition that a guardian ad litem be appointed for the Great-Granddaughters. Attorney Doris Mathews was subsequently appointed to serve as the guardian ad litem ("GAL").

Three days later, Brother tendered the 2004 Will for probate. Brother had been named by Decedent in the 2004 Will as the successor executor if their brother Reece Stricklan

declined or was unable to serve as executor. To establish his claim as the rightful administrator of Decedent's estate, Brother presented documentation reflecting that the named executor in the later will was mentally incompetent.

On September 7, 2007, the GAL moved for the court to appoint a personal representative for the estate for the following reasons:

(1) That two wills have been submitted to the Court, both purporting to be the Last Will & Testament of Billy Joe Stricklan and both apparently naming different personal representatives.

(2) Because a will contest will take a substantial amount of time and the estate will need to be administered immediately. Movant would ask the Court to name a third party to administer the Estate of Billy Joe Stricklan pending the determination as to which will is to be admitted.

In a filing five days later, the GAL "admit[ted] that the will dated October 25, 2004 is the valid Last Will and Testament of Billy Joe Stricklan" and denied that the 1982 Will offered for probate by Daughter was entitled to probate.

On September 28, 2007, the trial court filed an order finding that Brother, as proponent of the 2004 Will, "was a proper party to this proceeding, and that the case should be set for further hearing on the contest." The Probate Court also found that the 2004 Will "should be admitted to Probate"; appointed attorney Peter Alliman to serve as Administrator Ad Litem "until further Order of the appropriate Court"; and certified the will contest to the Circuit Court for trial.

In April 2009, after lengthy negotiations and delay of the trial in the Circuit Court, Daughter and the GAL filed a Motion and Order of Transfer, signed by all counsel, requesting that the case be transferred back to Probate Court because no dispute remained as to the validity of the 2004 Will and the parties were prepared to file a petition for approval of the settlement. The proposed family settlement, filed by Daughter as a beneficiary and the GAL representing the interests of the minor beneficiaries, divided Decedent's estate so that half would be awarded to Daughter and half would be awarded to the Great-Granddaughters to be held in trust.

After conducting a hearing on April 15, 2009, the Probate Court entered an Order Approving Family Settlement two days later. In the order, the court found

that the beneficiaries may agree upon the distribution of the assets of the

Estate, but may not change the trustee under the [2004] Will. However, the parties may present evidence in the future as to the appropriateness of the Trustee named in the Will.[3]

The Probate Court also ordered a partial distribution of $100,000 to Daughter by "the Administrator with Will Annexed" (Mr. Alliman). Counsel for Brother approved the order for entry.[4] This appeal followed.

## II. ISSUES

Brother presents the following issue for review, which we restate here:

1. Whether the Probate Court erred when it approved the settlement reached between the beneficiaries of the will without obtaining the approval of Brother and without conducting a hearing to determine whether the settlement was fair, reasonable, and in the best interests of the Great-Granddaughters.

2. Whether the settlement agreement should be set aside and the case remanded for probate of the 2004 Will, since Daughter has admitted that it is the valid will and has dismissed the will contest in Circuit Court.

## III. STANDARD OF REVIEW

The trial court's findings of fact are reviewed de novo with a presumption of correctness. Tenn. R. App. P. 13(d). This court will not disturb the trial court's findings of fact unless the evidence preponderates against them. *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). Regarding legal issues, our review is conducted under a de novo standard of review without any deference to the trial court's conclusions of law. *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001).

---

[3]The trustee named in the 2004 Will was Reece Stricklan. Brother was not named to be a successor trustee.

[4]The court's order indicated that an objection had been filed on behalf of Brother, but no written objection is of record. An unfiled copy of a "Memorandum of Law in Support of Position of Duly Appointed Administrator of the Last Will and Testament of Billy Joe Stricklan, Reed Stricklan," was attached to Brother's response to the motion to dismiss his appeal.

-5-

# IV. DISCUSSION

Brother contends that the settlement is directly contrary to Decedent's stated wishes that Daughter not receive any of the money intended for the Great-Granddaughters. He asserts that the Probate Court should not have approved the settlement without holding an evidentiary hearing, without receiving a report and/or testimony from the GAL, and without making findings of fact on whether the proffered settlement was fair, reasonable, and in the best interest of the minor beneficiaries.

Daughter and the GAL argue that Brother has no standing to challenge the ruling of the Probate Court. They believe the following rule as to who may contest a will should be applied:

> Such persons only as would be entitled to share in the real or personal estate of the decedent if there were no will, or if the will were set aside, are entitled to impeach its validity. A stranger will not be permitted to contest the will or disturb the existing probate; a kinsman who is not the nearest of kin, and who would take nothing under the statute or intestate succession if there were no will, cannot disturb it; the next of kin duly notified by the executor to attend and witness the proceedings of the first probate cannot disturb it afterwards; and other cases might be supposed. A contestant lacks standing to contest the validity of a will if he still would not share in an estate under an earlier will if the most recent will were set aside.

*Pritchard on Law of Wills & Administration of Estates*, 6th ed., § 355.

Courts in this state hold that before a contestant can go forward with a will contest, it must be shown by the contestant that he or she would be entitled to share in the decedent's estate if the will were set aside or if no will existed. *See In re Estate of West*, 729 S.W.2d 676, 677-78 (Tenn. Ct. App. 1987); *Donnelly v. Hendrix*, 355 S.W.2d 116, 120 (Tenn. Ct. App. 1960). In this case, Brother was not included as a beneficiary in either the 1982 Will or the 2004 Will, and he would not be next in line to inherit from Decedent's estate under the intestacy statute. Accordingly, as Brother has no interest in the estate, he lacks standing in this matter. *See Jennings v. Bridgeford*, 403 S.W.2d 289, 290 (Tenn. 1966); *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 222 (Tenn. Ct. App. 1997). Furthermore, although Decedent had listed Brother as the successor executor in the 2004 Will, the Probate Court appointed Mr. Alliman to administer the estate. That appointment operated to vest in the administrator, Mr. Alliman, for the time being, Decedent's title to the general personal estate.

*Union Planters Nat'l Bank & Trust Co. v. Beeler*, 112 S.W.2d 11, 12 (Tenn. 1938). Thus, Brother has no authority over the administration of the estate.

Although we have found that Brother lacks standing, we will address one issue raised by him.[5] Tenn. Code Ann. § 34-1-121(b) provides that

> [i]n any action, claim, or suit in which a minor . . . is a party . . ., the court in which the action, claim, or suit is pending . . . has the power to approve and confirm a compromise of the matters in controversy on behalf of the minor . . . . If the court deems the compromise to be in the best interest of the minor . . . any order or decree approving and confirming the compromise shall be binding on the minor . . . .

Accordingly, Tenn. Code Ann. § 34-1-121(b) requires the Probate Court to approve the compromise between Daughter and the minors by determining whether the settlement would be in the minors' best interest. *See Vannucci v. Memphis Obstetrics & Gynecological Assoc., P.C.*, No. W2005-00725-COA-R3-CV, 2006 WL 1896379, at *7 (Tenn. Ct. App. W.S., July 11, 2006). Caselaw similarly provides. *See Busby v. Massey*, 686 S.W.2d 60 (Tenn. 1984); *Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871, at * 1 (Tenn. Ct. App. M.S., Dec. 12, 2007).

In the written order, the Probate Court ruled

> [t]his cause came on for hearing . . . upon the Joint Petition requesting to settle and distribute the assets of the Estate of Billy Joe Stricklan, the objection thereto filed on behalf of Reed Stricklan, . . . statements of counsel and the entire record, from all of which the Court finds that the beneficiaries may agree upon the distribution of the assets of the Estate . . . .

There is no transcript of the hearing to approve the settlement in the record before us. Normally, without a record of the proceeding at issue, we presume that the trial court complied with the applicable statute. *See Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988) (involving a best interest of the child determination). However, the perfunctory order of the Probate Court along with the limited record before us does not provide us a sufficient basis upon which to conclude that the best interest of the minors has been adequately considered. Fairness, equity, and protection of the rights of the minors require that we vacate the judgment of the Probate Court approving the family settlement and

---

[5]We pretermit discussion of the other contentions asserted by Brother.

remand the matter for a hearing on whether the settlement will serve the best interest of the Great-Granddaughters. *See Thomas v. R.W. Harmon, Inc.*, 760 S.W.2d 212, 217 (Tenn. Ct. App. 1988).

## V.  CONCLUSION

The settlement order of the Probate Court is vacated and this case is remanded to that court for a hearing to determine whether the settlement will serve the best interest of the minors involved.  Costs of the appeal are assessed against the appellant, Reed Stricklan.

_____
JOHN W. McCLARTY, JUDGE